Slip Op. 03 - 38

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - - x
GEORGETOWN STEEL COMPANY, LLC, GERDAU
AMERISTEEL CORP., KEYSTONE CONSOLIDATED :
INDUSTRIES, INC., and NORTH STAR STEEL
TEXAS, INC.,                              :

                          Plaintiffs,    :
                 v.
                                         :
UNITED STATES,                                    Court No. 02-00739
                                         :
                          Defendant,
                                         :
                 -and-
                                         :
SAARSTAHL AG, ISPAT HAMBURGER STAHL-
WERKE GMBH and ISPAT WALZDRAHT HOCH-      :
FELD GMBH,
                                         :
                 Intervenor-Defendants.
- - - - - - - - - - - - - - - - - - - - - x

                    Memorandum & Order

[Defendant's motion to stay this action pending
 appeal from final judgment in another case denied.]

                          Dated:  April 1, 2003

        Collier Shannon Scott, PLLC (Paul C. Rosenthal, Kathleen W.
Cannon, R. Alan Luberda, John M. Herrmann and Grace W. Kim) for the
plaintiffs.

        Lyn M. Schlitt, General Counsel, James M. Lyons, Deputy
General Counsel, and Karen Veninga Driscoll, Attorney Advisor,
United States International Trade Commission, for the defendant.

        DeKieffer & Horgan (J. Kevin Horgan, Marc E. Montabine,
Merritt R. Blakeslee and Wakako O. Takatori) for intervenor-
defendant Saarstahl AG.

        Barnes, Richardson & Colburn (Matthew T. McGrath, Gunter von
Conrad and Stephen W. Brophy) for intervenor-defendants Ispat
Hamburger Stahlwerke GmbH and Ispat Walzdraht Hochfeld GmbH.


        AQUILINO, Judge:  Having disregarded this court's final

judgment, affirming its own determination after remand in another

case, comes now the defendant U.S. International Trade Commission ("ITC") with a motion to stay this action for judicial review based upon its record compiled sub nom. Carbon and Certain Alloy Steel Wire Rod From Brazil, Canada, Germany, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 67 Fed.Reg. 66,662 (Nov. 1, 2002), pending appeals taken from that judgment by exporters not parties to this action.  For the reasons stated hereinafter, this motion for a stay cannot be granted.

I

In Carbon and Certain Alloy Steel Wire Rod From Brazil, Canada, Egypt, Germany, Indonesia, Mexico, Moldova, South Africa, Trinidad and Tobago, Turkey, Ukraine, and Venezuela, 66 Fed.Reg. 54,539 (Oct. 29, 2001), the ITC terminated investigations with regard to subject imports from Egypt, South Africa and Venezuela. Domestic petitioners appealed those terminations to this court, which concluded in Co-Steel Raritan, Inc. v. U.S. Int'l Trade Comm'n, slip op. 02-59, 26 CIT ___, ___ F.Supp.2d ___ (June 20, 2002), to remand the matter to the agency for reconsideration, given the International Trade Administration, U.S. Department of Commerce's Notice of Preliminary Determination of Sales at Less Than Fair Value: Carbon and Certain Alloy Steel Wire Rod from Germany, 67 Fed.Reg. 17,384 (April 10, 2002).  The court's decision was expedited since both agency determinations were preliminary -- within the strict timeframes mandated by the Trade Agreements Act of 1979, as amended.

The ITC did not reciprocate.  At first, it interposed a motion for enlargement of the time for filing its remand determinations.  It next filed a motion for reconsideration of the court's order of remand and for a stay of that order pending such reconsideration.  Among other things, that motion failed to apprise the court that, some three days earlier, the Commission had issued News Release 02-062 in Inv. Nos. 731-TA-955, -960, and -963 to the effect that it had determined pursuant to the remand order that there was a "reasonable indication that a U.S. industry is materially injured by reason of imports of carbon and certain alloy steel wire rod from Egypt, South Africa, and Venezuela that are allegedly sold at less than fair value".  In spite of the necessary, expeditious denial of that motion, the Views of the Commission on Remand (Aug. 16, 2002) were not received and filed until twelve days thereafter -- or a full month following issuance of News Release 02-062.

Those Views of the Commission on Remand were as revealed on July 19, 2002, namely,

> find[ing], pursuant to 19 U.S.C. §1677(24)(A)(ii), and the Court's Order, that subject imports from Egypt, South Africa, and Venezuela are not negligible for purposes of our present material injury analysis.

Ibid., p. 11 (footnote omitted).  The plaintiffs in that case moved for expedited entry of final judgment, affirming this determination upon remand, on the stated ground that it "could potentially eliminate the need for future litigation arising out of that determina-

tion", given the ITC's "soon-to-be issued final determinations in the underlying agency investigations", which motion was granted. <u>Co-Steel Raritan, Inc. v. U.S. Int'l Trade Comm'n</u>, Slip Op. 02-113, at 3, 26 CIT ____, ____ (Sept. 13, 2002).  Separate appeals from that final judgment have been noticed by the Egyptian and Venezuelan intervenor-defendants therein, Nos. 03-1006, 03-1099 (Fed.Cir. 2002).

A

Neither of those two parties to that case is involved herein.  Yet, upon the filing of a joint status report and proposed briefing schedule for this action, as required by USCIT Rule 56.2-(a), to the effect that counsel for the plaintiffs and intervenor-defendants "do not believe that [it] should be deferred pending consideration of another case before this Court or any other tribunal", the defendant states that it

> cannot agree . . . because it will be submitting to the Court a Motion to Stay this litigation pending the Federal Circuit's decision in <u>Co-Steel Raritan</u>, Federal Circuit Case Number[s] 03-1006, -1009 . . ..

Joint Status Report, p. 2 (Jan. 29, 2003).  Subsequent to this submission and to that of defendant's proposed motion, counsel for the intervenor-defendants have withdrawn their opposition to a stay. Intervenor-defendant Saarstahl AG "does believe, however, that the Commission's motion does not fully explain the issues pertinent to whether a stay should be granted".  Saarstahl Response to Defendant United States' Motion for Stay, p. 1.

Indeed.  While the traditional factors that govern stay of an order pending appeal, to wit,

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies[1],

may not directly determine defendant's instant motion, the fact, to quote therefrom, that the "law is well-settled that a Court has discretion to stay its own proceedings"[2] does not signify standardless exercise thereof.  To be sure, as pointed out in Neenah Foundry Co. v. United States, slip op. 00-33, pp. 4-5, 24 CIT ___, ___ (2000), for example, in exercising this discretion, a court "must weigh competing interests and maintain an even balance"[3], taking into account those of the plaintiff, the defendant, non-parties or the public, and even itself.  See, e.g., Hill v. Mitchell, 30 F.-Supp.2d 997, 1000 (S.D.Ohio 1998); Schwartz v. Upper Deck Co., 967 F.Supp. 405, 416 (S.D.Cal. 1997); Koulouris v. Builders Fence Co., 146 F.R.D. 193, 194 (W.D.Wash. 1991), citing Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 56

---

[1] Save Domestic Oil, Inc. v. United States, 24 CIT ___, ___, 122 F.Supp.2d 1375, 1380 (2000), appeal dismissed, 18 Fed.Appx. 819, 2001 WL 929726 (Fed.Cir.), quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987), and citing Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed.Cir. 1990).

[2] Defendant's Motion for Stay Pending Related Federal Circuit Litigation, p. 6.

[3] Landis v. North American Co., 299 U.S. 248, 254-55 (1936).

(E.D.Penn. 1980); <u>McDonald v. Piedmont Aviation Inc</u>., 625 F.Supp.

762, 767 (S.D.N.Y. 1986).   However,

> the suppliant for a stay must make out a clear case of
> hardship or inequity in being required to go forward, if
> there is even a fair possibility that the stay for which
> he prays will work damage to some one else.

<u>Landis v. North American Co</u>., 299 U.S. 248, 255 (1936).   In other

words, a movant must "make a strong showing" that a stay is neces-

sary and that "the disadvantageous effect on others would be clear-

ly outweighed."   <u>Commodity Futures Trading Comm'n v. Chilcott Port-</u>

<u>folio Management, Inc</u>., 713 F.2d 1477, 1484 (10th Cir. 1983).

Here, the defendant recognizes this law as controlling[4],

but its motion fails to make the necessary "strong showing".   For

example, the motion speculates that there are "essentially just two

likely alternate outcomes that could be reached by the Federal

Circuit"[5]; intervenor-defendant Saarstahl AG, although having

switched its position from opposition to support of the motion,

claims that, while defendant's first perceived scenario [reversal

of the ITC's remand determination] is true, its converse is not, to

wit:

> . . . [I]n the event that the CAFC *reverses* the Commis-
> sion's termination of the antidumping investigations of
> Egypt, South Africa, and Venezuela (and *upholds* the
> Commission's remand determination reinstating the in-
> vestigations of those countries' imports), that decision
> will *not* be determinative of the issues in the instant
> appeal.   This is true for three reasons.

---

[4] <u>See</u> <u>supra</u> n. 2, pp. 6-7.

[5] <u>Supra</u> n. 2, p. 7.

First, there are not one but two "primary" issues in the instant appeal: the propriety of the Commission's negligibility determinations in 1) the antidumping and 2) the countervailing duty investigation of subject imports from Germany. But the only investigations that were initiated against imports from Egypt, South Africa, and Venezuela were *antidumping* investigations. With respect to Germany, on the other hand, the Commission initiated -- and later terminated -- both an antidumping and a *countervailing duty* investigation. Hence, even if the CAFC were to uphold the Commission's remand determin- ation finding subject imports from Egypt, South Africa, and Venezuela to be non-negligible, that decision would have no bearing on the negligibility of Germany in the *countervailing duty* investigation of subject merchandise because the Commission may not aggregate subsidized im- ports from a countervailing duty investigation with LTFV imports from an antidumping investigation for purposes of the Seven-Percent Rule.

Second, even if the CAFC were to uphold the Commis- sion's remand determination holding subject imports from Egypt, South Africa, and Venezuela to be non-negligible, it is not certain that that holding would have any bearing -- through operation of the Seven-Percent Rule -- on the Commission's termination of the *antidumping* investigation of Germany. Before the Commission could find that imports from Germany and some or all of Egypt, South Africa, and Venezuela collectively exceeded the seven-percent threshold, at a minimum the Department of Commerce would have to make (1) a preliminary and (2) a final affirmative determination of sales at LTFV with respect to both South Africa and Venezuela and (3) the Commission would have to make an affirmative determina- tion of material injury or threat thereof as to each -- a total of six separate determinations. If any one of these six determinations were decided in the negative, the investigation of one of these two countries would be terminated by operation of law, and the imports share of the other country, when aggregated with those of Egypt and Germany, would not exceed the seven-percent thres- hold.

Third, even assuming 1) the CAFC's affirmance of the Commission's remand determination, 2) affirmative prelim- inary and final LTFV determinations by Commerce with respect to imports from South Africa and Venezuela, and 3) affirmative final injury/threat determinations by the Commission of these two countries, there remains a signi- ficant legal question whether those decisions would have

    the power to alter the Commission's negligibility deter-
    mination as to Germany.[6]

In the light of such hypothesizing, the court cannot conclude that
a stay would ultimately advance this particular action.  Moreover,
this kind of complexity in cases under the Trade Agreements Act is
not conducive to quick judicial review in either the Court of In-
ternational Trade or the Court of Appeals for the Federal Circuit.
If, however, the contrary proves to be the case on appeal, it is
possible that the action at bar will not have reached final dis-
position and therefore that the appellate decision can be taken
into account.

                                 B

        The ITC was afforded speedy judicial review in Co-Steel
Raritan.  It seemingly chose to delay and then to disregard the
timely results thereof.  Indeed, the predicate to its instant mo-
tion is simply that two adverse parties have now appealed, both
months after the Commission first disclosed its determination of a
"reasonable indication that a U.S. industry is materially injured
by reason of imports of carbon and certain alloy steel wire rod
from Egypt, South Africa, and Venezuela that are allegedly sold at
less than fair value", supra.  Furthermore, one of those appeals
was not even noticed until well after the commissioners had decided

---

    [6] Intervenor-defendant Saarstahl AG Response to Defendant
United States' Motion for Stay, second through fourth pages
(italics in original, footnote omitted).

to vote in disregard of their own Views on remand[7] and this court's final affirmance thereof.

Certainly, this court's judgments are not necessarily the last word under the Trade Agreements Act, given the prescribed duality of judicial review pursuant thereto, but, on the other hand, parties to judgments *nisi prius* are not automatically at liberty to disregard them, in particular when they do not seek appellate relief in their own right. See, e.g., Smith Corona Corp. v. United States, 915 F.2d 683, 688 (Fed.Cir. 1990)("the decision of the Court of International Trade . . . is of controlling effect when rendered, and . . . such decision must be published within ten days after its issuance"). See also Maness v. Meyers, 419 U.S. 449, 458 (1975):

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

---

[7] See Carbon and Certain Alloy Steel Wire Rod From Brazil, Canada, Germany, Indonesia, Mexico, Moldova, Trinidad and Tobago, Turkey, and Ukraine, USITC Pub. 3546, p. 16, n. 88 (Oct. 2002) ("We interpret 19 U.S.C. §1516a(c)(3) to provide that the Commission's original published decision remains operative until final court disposition of the matter, which has not yet occurred given the filing of an appeal with the Federal Circuit Court of Appeals").

II

In view of the foregoing, defendant's Motion for Stay Pending Related Federal Circuit Litigation must be, and it hereby is, denied.

The proposed briefing schedule submitted for this action by counsel for the plaintiffs and initially for the intervenor-defendants shall apply, namely, the plaintiffs shall have 60 days from the date hereof to serve and file any dispositive motion, whereupon parties in opposition may have 60 days thereafter to respond thereto.  Any reply will then be due within 25 days of receipt of any such response.

So ordered.

Dated:  New York, New York
        April 1, 2003

_____
                                    Judge