**Slip Op. 04-128**

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————

AN GIANG AGRICULTURE AND FOOD : 
    IMPORT EXPORT COMPANY, ET AL., :

           *Plaintiffs*, :

           v. :

UNITED STATES, :     Court No. 03-00563

           *Defendant*, :

           and :

CATFISH FARMERS OF AMERICA, :

           *Defendant-Intervenor*. :

———————————————————————

[Plaintiffs' motion for stay of action pending issuance of decision in another action is granted.]

Dated: October 8, 2004

White & Case LLP (Walter J. Spak, Edmund W. Sim, Albert Lo, Adams C. Lee, Robert G. Gosselink and Emily Lawson), for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); David Richardson, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

Akin Gump Strauss Hauer & Feld LLP (Valerie A. Slater, Karen Bland Toliver, Thea D.R. Kendler and Jason A. Park), for Defendant-Intervenor.

**OPINION**

RIDGWAY, Judge:

In this action, plaintiffs An Giang Agriculture and Food Import Company *et al.*[1] (collectively "An Giang") challenge the Final Determination of the U.S. Department of Commerce ("Commerce") in Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, published as Notice of Final Antidumping Duty Determination of Sales at Less Than Fair Value and Affirmative Critical Circumstances: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 37,116 (June 23, 2003).[2]   Now before the Court is An Giang's Motion for Stay of Further Proceedings, which seeks to hold this matter in abeyance pending a determination in another action before the Court, Anshan Iron & Steel Co. v. United States, Consolidated Court No. 02-00088.

An Giang's primary argument in this case raises an issue of Commerce's authority under the antidumping statute.  According to An Giang, Commerce lacks the statutory authority, in calculating normal value in antidumping investigations involving non-market economies ("NMEs"), to deviate (as it did in this case) from its standard practice of valuing the actual, original factors of production that a foreign producer uses to produce its self-produced intermediate inputs, by instead directly

---

[1]Plaintiffs in this action include An Giang Agriculture and Food Import Export Company, An Giang Fisheries Import Export Joint Stock Company, Can Tho Agricultural and Animal Products Import Export Company, Can Tho Animal Fishery Products Processing Export Enterprise, Da Nang Seaproducts Import-Export Corporation, Mekongfish Company, Nam Viet Company Limited, QVD Food Company Limited, Viet Hai Seafood Company Limited, Vinh Hoan Company Limited, and Vinh Long Import-Export Company.

[2]The resulting antidumping order was published as Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 68 Fed. Reg. 47,909 (Aug. 12, 2003).

valuing those intermediate inputs themselves. *See* Tape of Oral Argument on Motion for Stay ("Tape") at 10:19-11:28. An Giang argues that Anshan raises "the same main issue" of Commerce's statutory authority. *See* Motion for Stay at 2. As An Giang notes, last year the Anshan Court remanded that matter to Commerce, instructing the agency to "reconsider its factors of production analysis by either providing an adequate explanation for its deviation from [its] previous practice, or . . . [by valuing the] factors of production . . . [that Anshan used to produce] its self-produced intermediate inputs." Anshan, 27 CIT ____, ____, 2003 WL 22018898, at *16 (July 16, 2003); Tape at 10:39-11:13.

Emphasizing the relatively advanced stage of the Anshan proceedings, the Motion for Stay asserts that, if the Anshan Court were to affirm the remand results that Commerce filed in that action, "that [affirmance] would have a significant impact on the instant proceeding, possibly obviating the need for further action in this proceeding." An Giang therefore concludes that, "because a final decision . . . in [Anshan] will have a direct bearing on this proceeding, the interest of conserving judicial resources as well as the parties' resources warrants a stay of this proceeding." *See generally* Motion for Stay at 2-3.

Both the Government and Defendant-Intervenor, the Catfish Farmers of America ("Domestic Catfish Farmers"), oppose the requested stay. *See generally* Defendant's Response to Plaintiffs' Motion for Stay of Further Proceedings; Defendant-Intervenor's Response to Plaintiffs' Motion for Stay of Further Proceedings.

As discussed more fully below, a stay *pendente lite* of limited duration may result in the voluntary dismissal of this action. At the very least, it can be expected to clarify the issues here, and

to streamline these proceedings. Moreover, the record is devoid of evidence that such a stay will work any real hardship on Commerce or the Domestic Catfish Farmers, or on any other party with a cognizable interest. An Giang's motion is therefore granted, and further proceedings in this action are stayed until 15 days following the issuance of the public version of the <u>Anshan</u> Court's post-remand opinion.

## I. <u>Analysis</u>

The Government and the Domestic Catfish Farmers argue that a stay is justified only where the movant "make[s] a strong showing" of necessity – a showing that they contend An Giang has here failed to make. *See* Defendant's Response at 3 (*quoting* <u>Tak Fat Trading Co. v. United States</u>, 24 CIT 1376, 1377 (2000)); Defendant-Intervenor's Response at 2-3 (*quoting* <u>Neenah Foundry v. United States</u>, 24 CIT 202, 203 (2000)). *See also* Tape at 21:10, 32:32. But, in fact, <u>Landis</u> – the seminal case on stays *pendente lite*, relied on in <u>Tak Fat</u> and <u>Neenah Foundry</u>, and invoked by all parties here – makes it clear that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward" with litigation (*i.e.*, a "strong showing" of need for a stay) only where "there is . . . a fair possibility that the stay . . . will work damage to some one else." <u>Landis v. North American Co.</u>, 299 U.S. 248, 255 (1936) (Cardozo, J.). *See* Tape at 15:02.

As An Giang correctly observes, neither the Government nor the Domestic Catfish Farmers has adduced evidence to make out a case that there is even "a fair possibility" that they (or anyone else with a cognizable interest) will suffer harm as a result of the requested stay. *See* Tape at 15:33, 13:52. Indeed, the Government's response is entirely silent on the subject; and the Domestic Catfish Farmers' response asserts simply that "some harm is inherent in any denial of the right to proceed."

Defendant-Intervenor's Response at 3 (*quoting* Neenah Foundry, 24 CIT at 205).[3]

---

[3]None of the cases cited by the parties here expressly holds that the party status of the movant (*i.e.*, plaintiff or defendant) may be a relevant factor in evaluating a request for a stay *pendente lite*. However, underpinning much of the case law – implicitly, if not explicitly – is a concern for the rights of assertedly aggrieved plaintiffs to seek redress in the courts.

Thus, for example, in Landis (analyzed in greater detail below), the Court was motivated by the effect of delay on the Landis *plaintiffs*: "Already the proceedings in [the other case] have continued more than a year. With the possibility of an intermediate appeal to the Circuit Court of Appeals, a second year or even more may go by before this court will be able to [finally resolve the case]." 299 U.S. at 256. So, too, in Klein v. Adams & Peck (discussed in greater detail below), where the trial court's stay permanently and unconditionally barred *the plaintiff* from proceeding with many of his court actions, the Court was driven by a conviction that the plaintiff's "right to proceed in court should not be denied except under the most extreme circumstances." Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971). The right of assertedly aggrieved plaintiffs to seek redress through access to the courts is perhaps most evident in CFTC, where (as explained in greater detail below) the Court struck down a stay entered in that case that enjoined the prosecution of *other* actions brought by individual plaintiffs who were not parties to CFTC. Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477 (10th Cir. 1983). The Court there noted, for example, that the plaintiffs "included seven persons over seventy years of age and several other persons who had retired before age sixty-five due to serious medical problems, such as coronary bypass surgery." 713 F.2d at 1486 n.8.

Equally compelling is Cherokee Nation – on which the Government here relies – where the Court of Appeals for the Federal Circuit condemned a stay entered by the trial court that precluded the Native American plaintiffs from pursuing their case against the United States pending the outcome of other litigation yet to be instituted by the federal government. Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413 (Fed. Cir. 1997) (*quoted* in Defendant's Response at 2). The Court of Appeals emphasized that the stay entered by the trial court effectively sounded the death knell for the plaintiffs' case:

> *[T]he trial court's stay seriously impairs the Tribes' access to court.* For almost 100 years, the United States has been trustee for the Tribes, but the United States has yet to take any legal action to preserve the Tribes' lands. Since 1970, the United States allegedly has been in various stages of preparing to file quiet title suits on behalf of the Tribes. Yet, it has filed none. Even now, eight years after the Tribes filed this suit, the United States has yet to take such action on behalf of its beneficiary.
>
> Even when filed, the quiet title actions will take years to complete. *To stay the Tribes' suit* pending these speculative and protracted events *is to place the Tribes*

*effectively out of court. See* Hines v. D'Artois, 531 F.2d 726, 730 (5ᵗʰ Cir. 1976) ("Effective death [of a suit] should be understood to comprehend any state of suspended animation."). . . . *The Tribes, therefore, have a significant interest in avoiding the stay to preserve their access to the court.*

124 F.3d at 1418 (emphasis added). The Court of Appeals therefore concluded that "the Tribes [had] a compelling interest in proceeding with their suit without delay." *Id*. *See also* Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5ᵗʰ Cir. 1983) (*cited with approval in* Cherokee Nation, 124 F.3d at 1416) (vacating stay that trial court had entered in favor of defendants in asbestos-related litigation, and noting that "[t]he realities of the hardship of a stay on the plaintiffs, many of whom allege that they are dying from asbestosis, [are] substantial and, in some instances, permanent. The grim reaper has called while judgment waits. Just as obviously, the bankruptcy proceedings are not likely to conclude in the immediate future. A stay hinged on the completion of those proceedings is manifestly 'indefinite.'").

Research has disclosed no cases where the court's analysis evinces comparable concern for the rights of defendants. This is not to suggest that defendants have no cognizable interest in the speedy disposition of litigation (whether that litigation is likely to result in their vindication, or not) – although it is worth noting that it is typically *defendants* who seek to use delay to their tactical advantage. Nonetheless, the common law historically has recognized the unique status of the plaintiff in litigation. Thus, as the Court noted in Neenah Foundry and Tak Fat, it is "a long- and still-standing principle of Anglo-American jurisprudence . . . that a party plaintiff is the master of its complaint." Neenah Foundry, 24 CIT at 203 (*citing*, *inter alia*, City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997) *and* The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913) (Holmes, J.)); Tak Fat, 24 CIT at 1376-77 (citations omitted). *See also*, *e.g.*, McDonald v. Piedmont Aviation, Inc., 625 F. Supp. 762, 767 (S.D.N.Y. 1986) (denying defendant's motion to stay action pending outcome of another case, court "upholds *plaintiff's right to chart the course of his own litigation* and to prosecute his claims in the manner of his choice") (emphasis added).

It is therefore arguably anomalous that, in this case, it is the *defendant-intervenor* – the Domestic Catfish Farmers – that has asserted that it is inherently harmed by "any denial of the right to proceed." *See* Defendant-Intervenor's Response at 3. In any event, it does not suffice for any party – plaintiff, defendant, or otherwise – to assert such an inherent right and rest its case on that bald, abstract proposition, without articulating in concrete terms the practical, real-life effects of the potential deprivation of that right under the circumstances of the particular case at bar.

Finally, as to the existence and extent of any "inherent harm" associated with a stay *pendente lite*, it is worth noting that, with some regularity, the Government consents to – and sometimes even itself seeks – such stays. *See*, *e.g.*, Georgetown Steel Co. v. United States, 27 CIT _____ , 259 F. Supp. 2d 1344 (2003) (denying Government's motion for stay of action challenging antidumping

In the course of oral argument on the Motion for Stay, the Government and the Domestic Catfish Farmers were pressed to articulate any potential harm they might suffer, giving them "a second bite at the apple." Still, their claims of potential damage were vague and generalized, at best.

The Government first asserted generally that a stay would leave Commerce "in limbo" as to liquidation and future administrative reviews *vis-a-vis* frozen catfish fillets from Vietnam. *See* Tape at 22:00.[4]  However, those effects are attendant to litigation generally.  At most, a stay would (to some extent) prolong them.  Even more importantly, as An Giang emphasizes, it has not sought to enjoin liquidation in this case to date.  *See* Tape at 33:50, 34:13.  There is thus very little substance to those claims of potential harm.

The Government also complained that the requested stay would permit An Giang to take a "wait and see" approach to litigation, asserting with some indignation that An Giang can be expected to attempt to distinguish Anshan if it finds the Court's decision in that case to be unhelpful.  *See* Tape at 19:50, 27:06. *See also* Tape at 32:16 (Domestic Catfish Farmers harbor same concern). The Government seemed to imply that such a course of action would be somehow unfair, but failed to

---

determination pending decision by Court of Appeals for Federal Circuit in related case); Order of March 4, 2003, Wilton Indus. v. United States, No. 00-00528 (CIT filed Nov. 21, 2000) (granting Government's motion for stay of action pending decision by Court of Appeals for Federal Circuit in unrelated case).

[4]The Government also seemed to suggest that it would be harmed by uncertainty as to the amount of revenue, if any, that might be forthcoming for the federal coffers as a result of the antidumping order at issue. However, when pressed, it was unable to spell out the precise nature of that harm. *See* Tape at 22:50. In any event, as explained above, such uncertainty is an unavoidable side-effect of this type of litigation, stay request or no. It is entirely unclear that the Government suffers any harm even if the typical period of uncertainty is extended (to some degree) by a stay. It is particularly difficult to understand the Government's claim of harm in light of the facts of this case, where – to date – liquidation has not been enjoined.

explain precisely why.[5]  To the extent that the Government's point is that the effect of a stay might

be to narrow and sharpen the issues in this action by permitting *all* parties to more carefully tailor

their arguments in light of the outcome in <u>Anshan</u>, that point counsels entry – not denial – of the

stay.  *See generally* <u>CMAX, Inc. v. Hall</u>, 300 F.2d at 265, 269 (9th Cir. 1962).[6]

The Domestic Catfish Farmers' presentation in oral argument added little to the

Government's case on harm.  Indeed, they candidly conceded that they could point to no specific

---

[5]The Government cannot paint this as a case where the effect of the requested stay would be to "compel[ ] [it] to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both," because it is a party to both <u>Anshan</u> and this case.  *See* <u>Neenah Foundry</u>, 24 CIT at 205 (*quoting* <u>Landis</u>, 299 U.S. at 255).  *See* <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 269 n.8 (9th Cir. 1962) (flatly rejecting a plaintiff's attempt to invoke the above-quoted statement from <u>Landis</u> in opposition to a request for a stay of litigation pending the outcome of administrative proceedings, stating "[T]hat observation [from <u>Landis</u>] is not applicable in the case [at bar] . . . because [the plaintiff] is a litigant in the [administrative] proceedings and will have its say before administrative findings and conclusions are entered.").

Moreover, like the Government, the Domestic Catfish Farmers are arguing that <u>Anshan</u> bears no relationship to the instant case.  They would thus be logically estopped from invoking the above-quoted observation from <u>Landis</u> and arguing that their absence as a party to <u>Anshan</u> should preclude entry of the stay.  *See also* Tape at 15:45-16:17 (An Giang addresses relevance of <u>Landis</u> observation).

[6]In <u>CMAX</u>, the Court of Appeals upheld the decision of the district court staying its proceedings – over the objections of plaintiff – pending a determination in a proceeding before the Civil Aeronautics Board ("CAB").

Rejecting the line of reasoning that the Government seemingly advances here, the Court of Appeals acknowledged in <u>CMAX</u> that "[i]t may be that [plaintiff, who opposed the stay] will be prejudiced by the delay [associated with the stay] in the sense that evidence will be obtained, or rulings made, as a result of the [CAB] proceedings, which will adversely affect the claims which [plaintiff] asserts in the district court.  But this is not the kind of prejudice which should move a court to deny a [stay].  If [plaintiff] is prejudiced by such an eventuality it will be because the [CAB] proceedings demonstrate a weakness in its case.  And if its case is weak, justice will be served by having that fact revealed prior to the district court trial."  300 F.2d at 269.

harm (particularly if the stay were of relatively short duration), except to the extent that a stay would constitute a "cloud" over the antidumping order at issue. The Domestic Catfish Farmers asserted broadly that unnecessary delays may result in legal and financial complications for the domestic industry. Tape at 32:43. Again, however, the instant litigation itself constitutes a "cloud" over the antidumping order at issue; and the Domestic Catfish Farmers have failed to identify – much less attempt to quantify – any specific legal and financial complications that might flow from the requested stay in particular.

In sum, even given a "second bite at the apple," the Government and the Domestic Catfish Farmers advanced only vague and generalized claims of potential harm to support their opposition to the requested stay. Moreover, they failed to quantify or substantiate those claims in any fashion. The extent of any potential harm they may suffer is thus entirely unclear – if, indeed, there is any potential for harm at all.[7]

_____

[7]Any conceivable potential for harm to other parties was further diminished by An Giang's clarification, in the course of oral argument, of the duration of the requested stay.

Initially, An Giang sought to stay this action "pending the resolution of an appeal in a separate matter by the Court of International Trade . . . in Consolidated Court No. 02-00088 [*i.e.*, Anshan]." *See* Motion for Stay at 2. In a letter sent to all parties before oral argument, the Court noted the possibility that the Anshan Court's post-remand decision conceivably might result in a second remand to Commerce, and that – in any event – the Anshan Court's ultimate decision could be appealed to the Court of Appeals for the Federal Circuit. Accordingly, An Giang was asked to be prepared in the course of oral argument to propose more precise language for the duration of the requested stay, to eliminate any potential ambiguity (or, if it was not possible to propose more precise language, to be prepared to explain the precise meaning of the language proposed in the Motion for Stay).

During oral argument, An Giang narrowed its request for relief, seeking a stay only until issuance of the Anshan Court's post-remand decision. *See* Tape at 13:12. An Giang further advised that it would not oppose a stay framed to expire on a date certain, if there were concerns that a post-

Absent a showing that there is at least "a fair possibility that the stay . . . will work damage to some one else," there is no requirement that An Giang "make a strong showing of necessity" or establish a "clear case of hardship or inequity" to warrant the granting of the requested stay. *See* CFTC, 713 F.2d at 1484 (articulating standard of "strong showing of necessity"); Landis, 299 U.S. at 255 (articulating standard of "clear case of hardship or inequity"). Nevertheless, An Giang has made out the requisite case, explaining that the time and resources of all parties (including the Court) could be wasted if a stay were not granted. *See* Tape at 12:41, 14:55; Motion for Stay at 2, 3.[8]

An Giang emphasizes that the central issues in both Anshan and the instant proceeding are "very inter-related," and that the Anshan Court's post-remand decision "could have a major impact on whether or not [An Giang] chooses to pursue" this litigation. *See* Tape at 12:29. Indeed, An Giang states that – if the Court's post-remand opinion in Anshan holds that Commerce in fact has

---

remand decision in Anshan might be delayed. *See* Tape at 14:07. In fact, a confidential version of the Anshan Court's post-remand decision has just issued. *See* Anshan Iron & Steel Co. v. United States, Slip Op. 04-121 (September 22, 2004) (Confidential).

[8]Citing Tak Fat and Neenah Foundry, the Government and the Domestic Catfish Farmers assert that, in evaluating an application for a stay, a court "must weigh [the] competing interests and maintain an even balance," taking into account the interests of all parties, the public, and even the Court itself. Tak Fat, 24 CIT at 1377 (*quoting* Landis, 299 U.S. at 254-55); Neenah Foundry, 24 CIT at 203 (same). *See* Defendant's Response at 2-3; Defendant-Intervenor's Response at 2. *See also* Tape at 15:20-15:32 (An Giang endorses "balancing" of competing interests).

It is less than clear, however, that An Giang's request for a stay of relatively limited duration is governed by the "balancing test" to which the Government and the Domestic Catfish Farmers point. *See generally* Cherokee Nation, 124 F.3d at 1416 (discussing Landis, and suggesting that "balancing test" governs cases where stay sought is "of indefinite duration"). In any event, even assuming that the "balancing test" is applicable here, it does not tip in favor of the Government and the Domestic Catfish Farmers. As detailed above, they have not demonstrated that they will suffer any real harm as a result of the requested stay. There is thus little, if anything, to "balance" against the considerations weighing in favor of the stay, which are discussed more fully below.

the statutory authority to deviate from its standard practice in NME cases, by valuing intermediate

inputs that were self-produced by the foreign producer – that decision will have "critical precedential

value" in this proceeding,[9] and An Giang may voluntarily dismiss this case.[10]  *See* Tape at 11:28,

12:18.

---

[9]As the Government correctly pointed out, the opinion of one judge of this Court does not bind the other judges of the Court.  Thus, the Court's post-remand decision in Anshan could not – in the strict, legal sense of the word – have truly "precedential" effect in this action.  *See* Tape at 18:38-19:04, 19:37-19:44; American Silicon Techs. v. United States, 261 F.3d 1371, 1381 (Fed. Cir. 2001).

Nevertheless, a case may properly be stayed pending the outcome of another case (the "lead" case) even where the "lead" case may not be potentially dispositive of the case sought to be stayed – *i.e.*, even where the "lead" case may, at most, streamline the issues in the case sought to be stayed. *See*, *e.g.*, Landis, 299 U.S. at 256 (noting that, even though "every question of fact and law" in the case sought to be stayed might not be decided in the "lead" case, "in all likelihood [the "lead" case] will settle many and simplify them all"); CMAX, 300 F.2d at 268 (in evaluating request for stay, court is to weigh the potential effect on "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay"); Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979) (stay pending outcome of another case is appropriate even where the other proceedings are not "necessarily controlling of the action" that is stayed).

The Government has also emphasized that, although both Anshan and the case at bar "concern Commerce's valuation of self-produced factors of production," the two cases "concern two completely different products, steel and catfish," as well as "two different nations, the Peoples Republic of China and the Socialist Republic of Vietnam."  Defendant's Response at 3-4; Tape at 24:48-26:05.  However, those *factual* differences are not relevant to An Giang's request for a stay, which is predicated on the existence of a common *legal* issue – *i.e.*, whether Commerce has the statutory authority to deviate from its standard practice in NME cases of valuing foreign producers' actual factors of production, by instead valuing intermediate inputs that were self-produced by the foreign producers.  *See* Tape at 14:18-14:45.

[10]An Giang notes that, although this action raises issues other than Commerce's authority under the statute to deviate from its standard practice, those other issues "relate mostly to . . . whether certain companies might be excluded from the antidumping order if Commerce's normal value calculation methodology is deemed invalid.  Thus, if Commerce's valuation of intermediate inputs is, in fact, in accordance with law, then the remaining issues are not quite as important."  *See* Tape at 12:52-13:11.

The Government and the Domestic Catfish Farmers maintain that the <u>Anshan</u> Court's first opinion (remanding the matter to Commerce) already has held that Commerce has the discretion under the statute to deviate from the standard practice at issue, and that the remaining issues are simply whether – under the circumstances of that case – Commerce properly exercised its discretion and adequately explained the reasons for its deviation. *See* Tape at 19:05-19:37, 29:35-30:44, 30:58-31:42. Thus, in the words of the Domestic Catfish Farmers, not only is it impossible for the <u>Anshan</u> Court's post-remand decision to establish precedent that controls this case, in fact that opinion could "have no bearing" whatsoever here. *See* Tape at 29:19, 30:44-30:58.

On this score, it suffices to state the obvious. The parties to this action have two critically different interpretations of the <u>Anshan</u> Court's initial opinion, remanding that matter to Commerce. *See* <u>Anshan</u>, 27 CIT ____, 2003 WL 22018898, at *1. That opinion can reasonably be read (as the Government and the Domestic Catfish Farmers read it) as implicitly ruling that Commerce has the discretion under the statute – in an appropriate case, and with adequate justification – to deviate from the standard practice at issue. On the other hand, it is also possible to construe the opinion as an exercise in judicial restraint (as An Giang apparently does) – that is, as an attempt to divine whether Commerce in that case had an adequate basis for deviating from its standard practice, assuming (without deciding) that the statute accords Commerce the discretion to deviate from that standard practice in an appropriate case. It is undisputed that at least one of the parties to <u>Anshan</u> – the plaintiffs – share An Giang's reading of the <u>Anshan</u> Court's first opinion, and anticipate that the issue of Commerce's statutory authority may be clarified by the Court's post-remand decision in that case. *See* Tape at 10:42 (counsel to An Giang is also counsel to Anshan); 35:04 (counsel to An

Giang anticipates that post-remand decision of <u>Anshan</u> Court may definitively resolve the issue of Commerce's authority under the statute).  In short, contrary to the claims of the Government and the Domestic Catfish Farmers, the initial opinion in <u>Anshan</u> remanding that action to Commerce does not squarely hold that Commerce has the authority under the statute to deviate from its standard practice in NME cases of valuing a foreign producer's actual factors of production, by instead valuing intermediate inputs that were self-produced by the foreign producer.

The Government and the Domestic Catfish Farmers also highlight the fact that An Giang has made no firm commitment to dismiss this action if the post-remand decision in <u>Anshan</u> holds that Commerce has the statutory authority to deviate from standard practice, as it did in this case.  *See* Tape at 21:14, 26:54, 31:57.  *See also* Defendant-Intervenor's Response at 2-3 (arguing that An Giang "offer[s] no facts or argument indicating that a stay will necessarily preclude further action if a particular result is reached, only that it may 'possibly' obviate further action").  However, as discussed in note 9 above, a stay may be warranted even where the other litigation would only clarify or simplify the issues in the action sought to be stayed.  The outcome of the other case need not be potentially dispositive.  Accordingly, An Giang's reluctance to give the unequivocal, ironclad assurances that the Government and the Domestic Catfish Farmers seek is of no great moment.

In their oppositions, the Government and the Domestic Catfish Farmers rely heavily on two cases from this Court, denying requests for stays pending the outcome of other litigation – <u>Tak Fat</u>, 24 CIT 1376,  and <u>Neenah Foundry</u>, 24 CIT 202.  However, as An Giang has observed, those cases can be readily distinguished from the case at bar.

Tak Fat involved a challenge to a determination by Commerce as to the scope of an antidumping order covering preserved mushrooms from China. The plaintiffs there sought to stay that action pending the outcome of a separate action challenging Customs' tariff classification of the subject merchandise. However, as the Court noted in Tak Fat, it is well settled that tariff classifications do not govern an antidumping determination regarding class or kind: "It is the responsibility of [Commerce] to interpret the term class or kind in such a way as to comply with the mandates of the antidumping laws, not the classification statutes. A product's tariff classification is merely of peripheral interest to suggest the general nature of a good." Tak Fat, 24 CIT at 1379 (*quoting* Torrington Co. v. United States, 14 CIT 507, 512-13, 745 F. Supp. 718, 722 (1990), *aff'd*, 938 F.2d 1276 (Fed. Cir. 1991)). In short, a stay was not justified in Tak Fat, because – unlike the situation here – there was, as a matter of law, no prospect whatsoever that the outcome of the other case (there, the classification case) could have any real effect on the case sought to be stayed. *See generally* Tape at 7:58-8:42.

Neenah Foundry is similarly inapposite. The plaintiffs there were contesting the final determination of the International Trade Commission ("ITC") in a sunset review of a countervailing duty order, in which the ITC found that revocation of the order at issue would not likely result in material injury to the domestic industry. The plaintiffs sought to stay that action pending the outcome of another action they had previously filed challenging Commerce's final determination in the same sunset review. The plaintiffs argued that – if they prevailed in their challenge to Commerce's determination – the countervailing duty rates calculated by Commerce on remand *could* be significantly higher, which in turn *could* cause a change of one commissioner's vote from

negative to affirmative, and thus *could* result in a continuation of the countervailing duty order, and *could* essentially moot their case against the ITC. Neenah Foundry, 24 CIT at 204. In short, a stay was not justified in Neenah Foundry, because there – in contrast to the situation here – the potential effect of the second case (that is, the plaintiffs' case against Commerce) on the case sought to be stayed was much too speculative and attenuated. Neenah Foundry, 24 CIT at 204-05. *See generally* Tape at 8:44-9:59.

Moreover, although the Government pointedly observes that the three primary cases that underpin Tak Fat and Neenah Foundry – Landis, Klein and CFTC – ruled *against* stays (*see* Tape at 20:50), those cases do not require the same result here. *See* Landis, 299 U.S. 248; Klein, 436 F.2d 337; CFTC, 713 F.2d 1477.

Indeed, Landis did not even rule out the entry of a stay in *that* case. Instead, the Supreme Court there held only that the stay entered by the trial court was "immoderate" in its duration, because it would hold the trial court's proceedings in abeyance (at the request of the federal defendants) "until the validity of [certain legislation, the enforcement of which the Landis plaintiffs sought to enjoin] ha[d] been determined *by the Supreme Court of the United States*" through a separate action brought by the federal government in another jurisdiction involving other parties (not the Landis plaintiffs). Landis, 299 U.S. at 251 (emphasis added). Specifically, the Court held that the trial court abused its discretion by entering a stay which would "continue in effect *after* the decision by the District Court in [the action brought by the federal government in another jurisdiction], and *until* the determination by [the Supreme Court] of any appeal therefrom." *Id*. at 256 (emphasis added). The Supreme Court expressly left open the possibility of a stay of shorter

duration – *i.e.*, "a stay [of the trial court's proceedings in <u>Landis</u>] to continue until the decision by the *District Judge* [in the action brought by the federal government in the other jurisdiction], and then ending automatically." *Id*. at 258 (emphasis added). An Giang here seeks a stay that is even less extensive in scope than that which the Supreme Court left open in <u>Landis</u>.

The stay at issue in <u>Klein</u> wasn't even a stay pending the outcome of other litigation. Moreover, like <u>Landis</u>, <u>Klein</u> too involved a stay which was deemed to be too extreme and which is clearly distinguishable from this case. Specifically, the stay entered by the trial court in <u>Klein</u> enjoined the litigious plaintiff from proceeding further with the cases in which the stay was sought until the plaintiff had posted a bond for security and attorneys' fees. In addition, the stay unconditionally and permanently barred the plaintiff from prosecuting any of his many other actions pending in the court (with the exception of a single case). <u>Klein</u>, 436 F.2d at 338-39. No such sweeping terms are at issue in the case here at bar.

<u>CFTC</u> is similarly distinguishable. <u>CFTC</u> was an action brought by the federal regulatory agency against certain commodities brokers alleged to be running a "Ponzi" scheme. The <u>CFTC</u> trial court granted the equity receiver's application to stay *other* actions brought by investors against the brokers in *other* state and federal courts, on the grounds (*inter alia*) that the investors' prosecution of those other suits would interfere with the prosecution of a separate, ancillary action brought by the receiver, and that a stay would serve the interests of judicial economy and conserve all litigants' resources. Reversing the stay, the appellate court in <u>CFTC</u> found that any potential for interference could be minimized. In addition, the appellate court emphasized that – given the differences in the nature of the claims and the relief sought in <u>CFTC</u> and the other actions – there was no chance

whatsoever that the receiver's action would preclude the need for the investors to go forward with their actions. *See generally* CFTC, 713 F.2d 1477. As the appellate court put it, "[The investors'] suits are thus merely being delayed, but not obviated. Hence the conservation of judicial efforts by delaying the investors' suits will likely be negligible." *Id*. at 1485.[11]

In contrast, in the instant case, An Giang – the plaintiff – has represented that voluntary dismissal of this action is likely if the Anshan Court's post-remand opinion holds that Commerce in fact has the statutory authority to deviate from its standard practice in NME cases, as it did in the case at bar. Granting the requested stay thus may result in substantial savings for An Giang and the opposing parties alike, as well as the Court. Even if An Giang does not seek to dismiss this action as a result of the Court's post-remand decision in Anshan, that opinion will likely streamline and clarify the issues in this case. And staying this action pending the Anshan opinion will spare the parties here the time and expense of supplemental briefing to address the opinion. The bottom line is that, as An Giang puts it, no party will be harmed by reading the Anshan opinion. *See* Tape at

--------

[11]As discussed in note 3 above, the party status of the movant (*i.e.*, plaintiff or defendant) may be a factor in evaluating a request for a stay *pendente lite*. *See also* American Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937) (case for stay is clearest "where the parties and the issues are the same" in the two cases). CFTC highlights some of the other potentially significant factors, which are glossed over or ignored in much of the relevant case law.

For example, CFTC notes the significance of the action that the movant seeks to stay, distinguishing between those cases where the relief sought is the stay of another proceeding versus those cases where "the relief sought is only a stay of the case in which the motion is made." CFTC, 713 F.2d at 1484. Similarly, CFTC emphasizes the relevance of the identity of the courts potentially affected by the requested stay. Specifically, CFTC recognizes that special considerations (such as comity) are implicated where the action sought to be stayed is pending in another court – and, in particular, that the power of a federal court to stay actions in the state courts is specifically constrained by federal statute. 713 F.2d at 1484 & n.5.

13:47, 16:19. Particularly in light of the absence of any showing of real harm associated with it, entry of the requested stay will serve both the interests of judicial economy and the interests of the parties as well.

## II. **Conclusion**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254. For the reasons set forth above, the relatively modest stay requested by An Giang here will promote judicial economy, conserve the resources of the parties, and ultimately advance the interests of justice. Indeed, the requested stay may dispose of this action entirely.

An Giang's motion is therefore granted, and further proceedings in this action are stayed until 15 days following the issuance of the public version of the Anshan Court's post-remand opinion.

A separate order will enter accordingly.

_/s/ Delissa A. Ridgway_
Judge

Dated: October 8, 2004
      New York, New York