Slip Op. 05 - 43

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - -x
GEORGETOWN STEEL COMPANY, LLC, GERDAU
AMERISTEEL CORP., KEYSTONE CONSOLIDATED   :
INDUSTRIES, INC., and NORTH STAR STEEL
TEXAS, INC.,                              :

                    Plaintiffs,           :
              v.
                                          :
UNITED STATES,                                     Court No. 02-00739
                                          :
                    Defendant,
                                          :
              -and-
                                          :
SAARSTAHL AG, ISPAT HAMBURGER STAHLWERKE
GMBH and ISPAT WALZDRAHT HOCHFELD GMBH,   :

              Intervenor-Defendants.      :
- - - - - - - - - - - - - - - - - - - - -x

                    Memorandum & Order

[Plaintiffs' motion for judgment upon the
 agency record denied; action dismissed.]

                              Decided:  April 1, 2005


        Collier Shannon Scott, PLLC (Paul C. Rosenthal, Kathleen W.
Cannon and R. Alan Luberda) for the plaintiffs.

        Lyn M. Schlitt, General Counsel, James M. Lyons, Deputy
General Counsel, Andrea C. Casson, U.S. International Trade Com-
mission, for the defendant.

        DeKieffer & Horgan (Marc E. Montalbine, Merritt R. Blakeslee
and Wakako O. Takatori) for intervenor-defendant Saarstahl AG.

        Barnes, Richardson & Colburn (Matthew T. McGrath, Gunter von
Conrad and Stephen W. Brophy ) for intervenor-defendants Ispat
Hamburger Stahlwerke GmbH and Ispat Walzdraht Hochfeld GmbH.


        AQUILINO, Senior Judge:  In Co-Steel Raritan, Inc. v.

U.S. Int'l Trade Comm'n, 26 CIT 1131 (2002), this court affirmed

the results of its remand of that part of the (preliminary) deter-

mination of the defendant Commission ("ITC") sub nom. Carbon and Certain Alloy Steel Wire Rod From Brazil, Canada, Egypt, Germany, Indonesia, Mexico, Moldova, South Africa, Trinidad and Tobago, Turkey, Ukraine, and Venezuela, 66 Fed.Reg. 54,539 (Oct. 29, 2001), which terminated investigations with regard to subject imports from Egypt, South Africa and Venezuela.  In response to that order, the Views of the Commission on Remand (Aug. 16, 2002) were to the effect that

> imports of wire rod from Egypt, South Africa and Venezuela are not negligible, and that there is a reasonable indication that an industry in the United States is materially injured by reason of imports of wire rod from Egypt, South Africa and Venezuela that are allegedly sold in the United States at less than fair value.

26 CIT at 1131.  The commissioners were of the view that an amendment by the International Trade Administration, U.S. Department of Commerce ("ITA") of the scope of its investigation reduced the volume of subject imports from Germany to less than the statutory maximum for negligibility and thereby caused their aggregation with those from Egypt, South Africa and Venezuela in accordance with 19 U.S.C. §1677(24)(A)(ii).  Whereupon Saarstahl AG and Saarsteel Inc., interested parties in the underlying administrative proceedings, moved for leave to intervene as parties defendant on the ground that the

> plaintiffs [we]re . . . attempting to use this litigation regarding the Commission's preliminary determination to influence [it]s final investigation . . ..  The Commission's rescission in its remand determination of its earlier negligibility determination with respect to Egypt, South Africa, and Venezuela raises the possibility

that the seven-percent exception to the negligibility statute will be triggered.  If this occurs, German imports will be rendered non-negligible, notwithstanding that they fall below the three-percent negligibility threshold.  Saarstahl respectfully submits that this substantial change in its posture in the Commission's investigations constitutes good cause for its intervention out of time.

Id. at 1133.  That untimely motion could not be granted.  See id. at 1132-34.

Following the filing of the final judgment in Co-Steel Raritan, supra, the above-encaptioned action was commenced, with Saarstahl AG and the Ispat firms obtaining early leave to intervene.  Plaintiffs' complaint[1] contests the ITC's final determination sub nom. Carbon and Certain Alloy Steel Wire Rod From Brazil, Canada, Germany, Indonesia, Mexico, Moldova, Trinidad and Tobago, Ukraine, 67 Fed.Reg. 66,662, 66,663 (Nov. 1, 2002), that imports of such subject merchandise from Germany were negligible and that the investigation as to them therefore be terminated.  The views of the Commission majority in support of this determination took note of the court's affirmance of the remand results in Co-Steel Raritan, supra, but also of notice(s) of appeal from that final judgment in declining to aggregate those German imports with subject imports from Egypt, South Africa and Venezuela.   See Plaintiffs' Non-confidential Appendix 1, USITC Pub. 3546, p. 16 and n. 88 (Oct. 2002), to wit:

---

[1]  Among other changes pointed out therein is that Co-Steel Raritan, Inc. had become plaintiff Gerdau Ameristeel Corp.

> . . . As with the antidumping duty investigations, there are no other subject countries with negligible levels of imports with which to aggregate subject imports from Germany in these countervailing duty investigations.
>
> * * *
>
> We interpret 19 U.S.C. § 1516a(c)(3) to provide that the Commission's original published decision remains operative until final court disposition of the matter, which has not yet occurred given the filing of an appeal with the Federal Circuit Court of Appeals. In accordance with its customary practice, the Commission has not issued any Federal Register notice with respect to its Remand Views pending final judicial disposition of the matter. Therefore, the Commission's investigations of [Egypt, South Africa and Venezuela] remain terminated. As these investigations are terminated they are not subject to the aggregate negligibility provisions. . . .

In other words, the linchpin of this ITC final determination of teutonic negligibility is the ITA's amendment of the scope of the investigation[2], which, to repeat, was also the crux of the Commission's own prior remand views that were affirmed by the court in Co-Steel Raritan, supra, yet the defendant decided to disregard that orderly, timely administrative aggregation and judicial affirmance. Indeed, ITC counsel thereafter joined in support[3] of the appeals taken on behalf of intervenor-defendants from Egypt and Venezuela.

That circumstance apparently induced the three-judge panel of the Federal Circuit to consider the jurisdiction of both

---

[2] See Plaintiffs' Nonconfidential Appendix 1, USITC Pub. 3546, p. 1 n. 2 (Oct. 2002).

[3] See Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1297 (Fed.Cir. 2004).

this and that court.  A judge in dissent concluded that the undersigned lacked jurisdiction to opine on the Commission's "affirmative" but "preliminary" remand results.[4]  The panel majority held that this court had such authority and that its court had appellate jurisdiction over the resultant final CIT judgment.[5]  It thus proceeded to consider the merits thereof and came to conclude that this court

> erred . . . when it remanded the case to the Commission for further consideration in light of Commerce's modification of the scope of the investigation. . ..[6]

Whereas the judge in dissent would have vacated this court's final judgment and dismissed the appeals therefrom for lack of jurisdiction[7], the majority remanded for further proceedings to

> consider the contention in Co-Steel's original motion for judgment on the administrative record that it did not address in *Co-Steel I*.  That is the contention that the Commission erred in concluding in the preliminary determination that there was no reasonable indication that wire rod imports from Egypt, South Africa, and Venezuela would imminently exceed statutory negligibility levels, whether considered individually or collectively.[8]

That matter is *sub judice* before this court.

---

[4] See id. at 1317-19.

[5] See id. at 1303-09.

[6] Id. at 1317.

[7] See id. at 1319.

[8] Id. at 1317.

I

Also to be decided of course herein is what remains of this matter in light of the foregoing background. To date, no party has intimated that the court might not be possessed of subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1581(c), 2631(c), 2636(c). Presuming that it is leads to the question of whether or not plaintiffs' complaint states a claim upon which affirmative relief can be granted. Alas, the court concludes that it does not.

The sum and substance of plaintiffs' motion for judgment upon the agency record is:

B.   The Commission's Determination that Imports of CASWR from Germany Could Not Be Aggregated with Imports of CASWR from Egypt, South Africa and Venezuela to Determine Negligibility Because Those Investigations Had Been Terminated Was Unlawful[.]

                            *   *   *

C.   The Statutory Negligibility Provision Does Not Permit Refusal to Aggregate Dumped With Subsidized Imports in Assessing Aggregate Import Levels[.]

D.   In Assessing Negligibility, the Commission Is Not Precluded from Aggregating Imports from Germany with Imports from Egypt, South Africa and Venezuela Merely Because Final Commerce and Commission Decisions Have Not Yet Been Issued as to Such Imports[.[9]]

---

[9] Plaintiffs' Brief, page i. The acronym "CASWR" refers to the subject merchandise.

In fairness to plaintiffs' counsel, it should be pointed out that this motion was filed before the decision of the court of appeals -- and after this court had denied a motion by the defendant to stay this action pending that decision.  See Georgetown Steel Co. v. United States, 27 CIT ____, ____, 259 F.Supp.2d 1344, 1348 (2003)("parties to judgments *nisi prius* are not automatically at liberty to disregard them, in particular when they do not seek appellate relief in their own right").  It must also be recognized, however, that Co-Steel Raritan, supra, and this action both emanate from the same antidumping and countervailing-duty administrative investigations and have engendered notable "hypothesizing" by the parties, including intervenor-defendant Saarstahl AG.  See, e.g., id., 27 CIT at ___, 259 F.Supp.2d at 1347-48.  Indeed, it was the petitioners cum plaintiffs that precipitated those investigations and which decided after their commencement to petition the ITA for an amendment of their scope.  And the potential impact of that tactic was well-understood by their counsel, e.g.:

> This amendment to the scope of the cases has direct relevance to the Commission's negligibility analysis.  As set forth in the domestic industry's submission, Germany was believed to be a significant producer of the excluded tire cord and tire bead products. []  Excluding these products from the scope of the cases, therefore, would result in a decline in Germany's subject import share over the 12-month period reviewed. Based on the domestic industry's best information, as set forth on the record of the Commission's case, the scope modification would result in a reduction in imports from Germany to 2.9 percent in the August 2000-July 2001 period.  . . .  Aggregation of these German imports with imports from

Egypt, South Africa, and Venezuela in the August 2000-
July 2001 period would result in a 9.27 percent import
share, well above the seven percent threshold.[10]

Suffice it to state now that this maneuver has had its day in two courts and also to confirm that this one does not interpret the mandate of the Federal Circuit in the first case as providing a basis for relief for the plaintiffs herein from the predicament, the "extraordinary procedural posture"[11], that they instigated.  Ergo, judgment should be entered, denying their motion[12] and dismissing this contingent action.

So ordered.

Decided:  New York, New York
          April 1, 2005

                                         Thomas J. Aquilino, Jr.
                                              Senior Judge

---

[10] Plaintiffs' Brief in Support of Rule 56.2 Motion for Judgment Upon the Agency Record [in Co-Steel Raritan, Inc. v. United States, Court No. 01-00955], pp. 30-31 (Dec. 21, 2001)(citations omitted).

[11] Plaintiffs' Nonconfidential Appendix 1, USITC Pub. 3546, pp. 47, 49 (Oct. 2002)(Additional and Dissenting Views of Commissioner Lynn M. Bragg).

[12] Given the seemingly-intractable lie of this matter, the parties' motions for oral argument can be, and they hereby are, denied.